WINSTON & STRAWN LLP
ROBERT A. JULIAN (SBN: 88469)
STEPHEN I. BERKMAN (SBN: 162226)
MARK A. OLSON (SBN: 148613)
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400

Attorneys For Plaintiff
CASCADE ENTERTAINMENT GROUP, LLC,
a California limited liability company

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASCADE ENTERTAINMENT GROUP, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>BUENA VISTA RANCHERIA OF THE ME-WUK INDIANS, a sovereign Indian tribe; the BUENA VISTA ECONOMIC DEVELOPMENT AUTHORITY, a body corporate and politic and instrumentality of the Buena Vista Rancheria of Me-Wuk Indians; the TRIBAL COUNCIL OF THE BUENA VISTA RANCHERIA OF THE ME-WUK INDIANS, the governing body of the Buena Vista Rancheria of the Me-Wuk Indians; and DOES 1 through 200, inclusive,<br><br>Defendants | Case No. 2:05-cv-1382-MCE JFM<br><br>**REPLY BRIEF IN SUPPORT OF CASCADE ENTERTAINMENT GROUP, LLC'S MOTION TO REMAND**<br><br>DATE: September 26, 2005<br>TIME: 9:00 a.m.<br>COURTROOM: 3 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. The Court Lacks Federal-Question Jurisdiction Under *Grable* [Oppo. 13-18]..............2

        1. The *Grable* decision .................................................................................................2

        2. There is no federal question jurisdiction here under *Grable*. ...................................3

        3. Because the alleged federal issue is raised by the Tribe's affirmative defense, *Grable* does not apply and the action was not removable....................3

            a. Cascade is not required to plead or prove that the NIGC approved the contracts because the Tribe repudiated the contracts. .................................................................................................3

            b. The federal issue is raised by the Tribe's affirmative defense................4

    B. Because the Artful Pleading Doctrine Does Not Apply, the Action Was Not Removable [Oppo. 16-17]. ..........................................................................................5

    C. Complete Preemption Does Not Apply to Cascade's Claims [Oppo. 5-13]. ...................7

    D. The Tribe's Attempt to Leverage Its Affirmative Defense Into Federal Question Jurisdiction Must Fail..........................................................................................9

III. CONCLUSION .....................................................................................................................10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

i

**REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND**

SF:115618.1

# TABLE OF AUTHORITIES

Page

**Cases**

*Aetna Health, Inc. v. Davila,*
542 U.S. 200 (2004) .................................................................................................10

*ARCO Envtl. Remediation LLC v. Dept. Health & Envtl. Quality,*
213 F.3d 1108 (9th Cir. 2000) ................................................................................1, 6

*Beneficial Nat'l Bank v. Anderson,*
539 U.S. 1 (2003) ....................................................................................................10

*Brennan v. Southwest Airlines Co.,*
134 F.3d 1405 (9th Cir. 1998) ..................................................................................6

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) .....................................................................................2

*Caggiano v. Pfizer, Inc.,*
2005 WL 2050085 (S.D.N.Y.) ..................................................................................3

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
222 Cal. App. 2d 1371 (1990) ..................................................................................3

*Casino Resources Corporation v. Harrah's Entertainment, Inc.,*
243 F.3d 435 (8th Cir. 2001) ....................................................................................9

*Caterpillar, Inc. v. Williams,*
482 U.S. 386 (1987) ................................................................................................10

*County of Solano v. Vallejo Redev. Agency,*
75 Cal. App. 4th 1262 (1999) ...................................................................................4

*Employers-Shopmen's Local 516 Pension Trust v. Travelers Cas. & Sur. Co.,*
2005 WL 1653629 (D. Or.) .......................................................................................6

*First Am. Casino Corp. v. Eastern Pequot Nation,*
175 F.2d 205 (D. Conn. 2000) ..................................................................................8

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust,*
463 U.S. 1 (1983) ......................................................................................................1

*Gaus v. Miles, Inc.,*
980 F.2d 564 (9th Cir. 1992) ..................................................................................10

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,*
125 S. Ct. 2363 (2005) .....................................................................................passim

*Harmon v. Maury County,*
2005 WL 2133697 (M.D. Tenn.) ..............................................................................3

*Hendricks v. Dynegy Power Marketing, Inc.,*
160 F. Supp. 2d 1155 (S.D. Cal. 2001) .....................................................................6

*In re Marriage of Iverson*,
  11 Cal. App. 4th 1495 (1992)..................................................................................5

*In re Zyprexa Prod. Liability Litig.*,
  375 F. Supp. 2d 170 (E.D.N.Y. 2005)......................................................................2

*Kentucky v. Claymore Group*,
  2005 WL 1868810 (E.D. Ky.)..................................................................................5

*Lippitt v. Raymond James Fin. Servs., Inc.*,
  340 F.3d 1033 (9th Cir. (2003)..............................................................................6, 7

*McCready v. White*,
  417 F.3d 700 (7th Cir. 2005)....................................................................................2

*Oneida Indian Nation v. County of Oneida*,
  132 F. Supp. 2d 71 (N.D.N.Y. 2000).......................................................................8

*Precision Pay Phones v. Qwest Comm. Corp.*,
  210 F. Supp. 2d 1106 (ND. Cal. 2002)....................................................................6

*San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*,
  415 F.3d 145 (1st Cir. 2005)....................................................................................2

*Smith v. Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921).................................................................................................2

*Sparta Surgical v. NASD*,
  159 F.3d 1209 (9th Cir. 1998)..................................................................................6

*Sullivan v. First Affiliated Sec., Inc.*,
  813 F.2d 1368 (9th Cir. 1987)..................................................................................6

*Sweeney v. KANS, Inc.*,
  247 Cal. App. 2d 475 (1966)....................................................................................5

*Tamiami Partners, Ltd. v. Miccosukee Tribe*,
  63 F.3d 1030 (11th Cir. 1995)..............................................................................8, 9

*Trump Hotels & Casino Resorts Development Company v. Roskow*,
  2004 WL 717131 (D. Conn.)....................................................................................7

**Statutes**

25 U.S.C. § 2710 ............................................................................................................8

26 U.S.C. § 6335 ............................................................................................................2

47 U.S.C. § 543 ..............................................................................................................2

Cal. Civ. Code § 1440 ....................................................................................................4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Cal. Civ. Code § 1598 .................................................................................................................5
Cal. Civ. Code § 1615 .................................................................................................................5

SF:115618.1

## I. INTRODUCTION

The Buena Vista Rancheria of the Me-Wuk Indians and its related entities[1] (collectively, the "Tribe") brought a motion to dismiss Cascade's claims on the grounds that the contracts on which the claims are based are management contracts that, to be valid, must be approved by the NIGC. *See* Tribe's Memo. ISO Mo. Dis. at 1 (filed July 15, 2005).

In its opposition to Cascade Entertainment Group, LLC's ("Cascade") motion to remand, the Tribe raises the same defense. Oppo. at 3, citing its Motion to Dismiss. As the Tribe admits, "the federal questions [were] raised in the Tribe's Motion to Dismiss (e.g., whether the alleged agreements are covered by the IGRA and required NIGC approval)." Oppo. 5 n.3.

In its opposition to the motion to remand, the Tribe is re-litigating its motion to dismiss. *Compare* Oppo. *with* Tribe's Memo. ISO Mo. Dis. This is best evidenced by the Tribe's numerous citations to its motion to dismiss. Oppo. at 2, 3, 4 & n.2, 5 n.3, 7 n.6, 9, 14, 15.

This approach by the Tribe violates the rule that a federal-law defense does not create federal question jurisdiction. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 11 (1983). Thus, the Tribe's opposition fails as a matter of law.

In an attempt to shore up its contention that there is federal question jurisdiction, BVDC raises new a ground, not raised in its notice of removal, for federal question jurisdiction -- that it exists under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S. Ct. 2363 (2005). That is improper. *See ARCO Envtl. Remediation LLC v. Dept. Health & Envtl. Quality*, 213 F.3d 1108, 1116-17 (9th Cir. 2000) (defendant, in notice of removal based federal question jurisdiction on specific federal statutes and may not later assert alternative statues as basis). But, again, the Tribe's argument fails because it fails to address what Cascade claims in its complaint and instead focuses on the federal law defense that it raised in its motion to dismiss.

The conclusion is the same as before. Cascade's routine commercial state-law claims could not have been filed in this Court. The action should be remanded to state court.

---

[1] Buena Vista Economic Development Authority and the Tribal Council.

1

**REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND**

SF:115618.1

## II. ARGUMENT

Cascade first addresses the Tribe's new ground for federal jurisdiction, then turns to complete preemption.

### A. The Court Lacks Federal-Question Jurisdiction Under *Grable* [Oppo. 13-18].

#### 1. The *Grable* decision

In *Grable*, the Court analyzed the "longstanding, if less frequently encountered variety of federal 'arising under' jurisdiction" first articulated in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921). *Grable*, 125 S. Ct. at 2366-67. Cautioning that the doctrine does not exclude claims "simply because they appeared in state raiment" but also does not function "as a password opening federal courts to any state action embracing a point of federal law," the Court stated the applicable test:

> [T]he question is, does a state-law claim [1] necessarily raise a stated federal issue, actually disputed and substantial, [2] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.*

A claim "*necessarily* raises a *stated* federal issue" under *Grable* only if the complaint alleges a violation of federal law as part of the state-law claim. In *Grable*, "Grable brought a quiet title action in state court, *claiming* that Darue's record title was invalid because the IRS had failed to notify Grable in the exact manner required by [26 U.S.C.] § 6335(a) ...." *Id.* at 2366. The Court held, "whether Grable was given notice within the meaning of the federal statute is *thus* an essential element of its state-law claim." *Id.* at 2368. The Court continued in part the "generous" holding of *Smith* that it must "appear[] from the complaint that the right to relief depends upon the construction or application of federal law." *Id.* at 2367, quoting *Smith*, 255 U.S. at 199. This requirement has been uniformly followed in cases that apply *Grable*[2] and that remand actions because the state-law

---

[2] *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-95 (2d Cir. 2005) (jurisdiction proper; plaintiff stated in complaint that defendant violated 47 U.S.C. § 543(d)), cited by BVDC, Oppo. at 13; *McCready v. White*, 417 F.3d 700, 702-03 (7th Cir. 2005) (jurisdiction proper; plaintiff's claim rests entirely on federal law); *San Juan v. Corporación para el Fomento Económico de la Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (jurisdiction proper; amended complaint explicitly linked allegations and detailed federal regulations), cited by BVDC, Oppo. at 13; *In re Zyprexa*

claim did not plead a violation of federal law.[3]

The touchstone of the analysis under *Grable* is what the plaintiff alleges in its complaint, just like under the well pleaded complaint rule and the complete preemption doctrine. *See* Cascade's Opening Brief ("Op. Br.") at 6, 11-12.

If the state-law claim alleges a violation of federal law, then two limitations apply. The federal issue must be "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 125 S. Ct. at 2367. Second, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.*

### 2. There is no federal question jurisdiction here under *Grable*.

In its complaint, Cascade has asserted claims for relief based on California contract law and secured-transactions law. Cascade has not alleged a violation of federal law as part of these state-law claims. The fundamental requirement under *Grable* is not met. That alone establishes that *Grable* does not apply and that this Court does not have federal question jurisdiction.

### 3. Because the alleged federal issue is raised by the Tribe's affirmative defense, *Grable* does not apply and the action was not removable.

#### a. Cascade is not required to plead or prove that the NIGC approved the contracts because the Tribe repudiated the contracts.

The Tribe's principal argument is: under California law, a plaintiff, that asserts a claim for breach of contract, must plead and prove the performance of conditions precedent; NIGC approval of the Management Agreement was a condition precedent to that agreement; hence, Cascade must prove that its contracts with the Tribe are valid and enforceable under federal law; and thus the action is removable. Oppo. at 17 n. 10, citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 2d 1371, 1389 (1990). But that law does not apply to this case.

---

*Prod. Liability Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005) (jurisdiction proper; plaintiff alleged violation of federal law).

[3] *Harmon v. Maury County*, 2005 WL 2133697, *4, *6 (M.D. Tenn.) (action remanded; "unlike the claim in *Grable* ..., Plaintiffs' claims do not call into question the proper interpretation of federal tax law"); *Caggiano v. Pfizer, Inc.*, 2005 WL 2050085, *2 (S.D.N.Y.) (action remanded; "none of the claims depend on the borrowing of federal law"), cited by BVDC, Oppo. at 13.

3

**REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND**

SF:115618.1

The Tribe anticipatorily repudiated the contracts. *See* Cmplt ¶¶ 634-64, 73-78 & Exh. U (Tribe's Repudiation Letter). Under California law, a plaintiff is not required to perform any of its conditions where the defendant repudiated:

> If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party.

Cal. Civ. Code § 1440. "A promisor's anticipatory repudiation permits the promisee [here Cascade] to recover damages immediately for a total breach of contract *without performing or offering to perform any condition precedents* under the contract." *County of Solano v. Vallejo Redev. Agency*, 75 Cal. App. 4th 1262, (1999); *id.* (holding, "Due to the Agency's anticipatory breach, Solano County was excused from fulfilling any conditions ... under the contract").

So, instead of pleading and proving satisfaction of conditions precedent, Cascade is obligated to plead and prove "that it had the ability to perform under the contract." *Id.* And Cascade has so plead: "Cascade was ready, willing and able to perform as required by the Cascade Contracts." Cmplt ¶ 77. Cascade has also alleged the substantial and expensive work that it and the Tribe did with and for the NIGC prior to its repudiation. Cmplt. ¶¶ 56.a, b, d, f, 69.

Further, in its breach of contract claim, Cascade alleges: "Cascade has duly performed all conditions and covenants and promises required to be performed by it under the Cascade Contracts, *except insofar as* such performance [1] has been *prevented by the acts and omissions of the Tribe* or [2] is otherwise *excused*." Complaint ¶ 83. The Tribe prevented the satisfaction of the condition by its repudiation.

### b. The federal issue is raised by the Tribe's affirmative defense.

The Tribe contends, "Cascade's claims necessarily raise substantial and disputed questions of federal law that determine the threshold questions of whether Cascade has viable and enforceable claims against the Tribe." Oppo. at 14. The federal-law issues are "whether the agreements alleged in Cascade's complaint required NIGC review and approval as an essential prerequisite to their validity and enforceability." *Id.* But the Tribe admits that those federal-law

issues were "raised in the Tribe's Motion to Dismiss." Oppo. at 5. n.3.

The illegality of a contract is an affirmative defense raised by the defendant and on which the defendant has the burden of proof. *In re Marriage of Iverson*, 11 Cal. App. 4th 1495 (1992) ("under general contract rules, the burden of establishing a particular contract is illegal is on the party claiming the illegality"); *Sweeney v. KANS, Inc.*, 247 Cal. App. 2d 475, 480 (1966) (same); *see* Cal. Civ. Code § 1598. This allocation of burdens of pleading and proof of a valid contract is common. There are other components of a "valid contract" that the plaintiff need neither pled nor prove. A good example is consideration. While it is necessary for a valid contract, lack of consideration is an affirmative defense. Cal. Civ. Code § 1615.

Illegality is part of this case only because the Tribe chose to assert the affirmative defense. Similarly, the Tribe's argument about sovereign immunity fails because it is predicated on the same affirmative defense. *Id.* at 16-17. The Tribe's argument that federal-question jurisdiction is consistent with Congressional intent assumes that the relevant issue is its affirmative defense, and, so, it too must fail. *Id.* at 17-18.

The Tribe has not proven the main requirement of *Grable*, namely that the complaint alleges a violation of federal law as part of a state-law claim. The Tribe also misconstrues *Grable*. The requirements that the federal-law issue must be substantial and that its federal adjudication issue must be consistent with Congressional intent are not independent tests providing federal-question jurisdiction. They are, instead, limitations that close the door to claims that do allege a violation of federal law but fail to comply with those additional requirements. *Grable*, 125 S. Ct. at 2367.

Thus, there is no federal jurisdiction under *Grable*. *Kentucky v. Claymore Group*, 2005 WL 1868810, *3 (E.D. Ky.) (discussing *Grable*; where "the only reason that federal law will be considered is because Defendants will raise it," there is no federal jurisdiction; action remanded).

**B.   Because the Artful Pleading Doctrine Does Not Apply, the Action Was Not Removable [Oppo. 16-17].**

The Tribe argues that Cascade has engaged in "artful pleading" by casting a federal claim in state-court clothing. Oppo. 16-17. Under the "artful pleading" doctrine, the plaintiff, while the "master of the complaint," "may not defeat removal by omitting to plead necessary federal

1  questions in a complaint." *ARCO*, 213 F.3d at 1114.

2  Cascade's claims do not fall within the three kinds[4] of cases to which the doctrine does apply. First, a "state-created cause of action can be deemed to arise under federal law ... where federal law completely preempts state law." *ARCO*, 213 F.3d at 1114; *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041-42 (9th Cir. (2003). As discussed below and in Cascade's opening brief, Op. Br. at 5-16, this is not such a case.

Second, a "state-created cause of action can be deemed to arise under federal law ... where the claim is necessarily federal in character." *ARCO*, 213 F.3d at 1114; *Lippitt*, 340 F.3d at 1041-42. These are cases where "the defendant has a federal preemption defense to the state claim and federal law provides a remedy."[5] *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998), cited by *Lippitt*, 340 F.3d at 1042. While the Tribe argues that Cascade's claims are preempted by the IGRA, Oppo. at 9-10, the point of its preemption defense is that the contracts are void and that there is no remedy. Further, Cascade's claims are not preempted by the IGRA. Op. Br. at 9. Cascade's claims do not fall within this second branch of the artful pleading doctrine.

Third, a "state-created cause of action can be deemed to arise under federal law ... where the right to relief depends on the resolution of a substantial, disputed federal question." *ARCO*, 213 F.3d at 1114; *Lippitt*, 340 F.3d at 1041-42. Those cases are now governed by *Grable*. *Employers-Shopmen's Local 516 Pension Trust v. Travelers Cas. & Sur. Co.*, 2005 WL 1653629 *5-6 (D. Or.) (substantial federal question cases now governed by *Grable*).

The Tribe contends that Cascade's claims fall within the third type of case, because "the federal question of whether NIGC approval was required as a prerequisite to the validity and

---

[4] It also applies in the fourth and "rare" case where plaintiff files in federal court and loses and then, re-characterizing its claims as state-law claims, files in state court, to avoid the res judicata effect of the federal judgment. *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, (9th Cir. 1987), discussed in *Lippitt*, 340 F.3d at 1041 n.5.

[5] Other formulations of the test lead to the same result: whether "the propriety" of the conduct alleged in the claim "must be exclusively determined by federal law," *Sparta Surgical v. NASD*, 159 F.3d 1209, 1219 (9th Cir. 1998); whether the federal law "depive[s] the [state] courts of jurisdiction over this case," *ARCO*, 213 F.3d at 1115. Some authorities treat this type of case as "indistinguishable from the 'complete preemption' doctrine." *Precision Pay Phones v. Qwest Comm. Corp.*, 210 F. Supp. 2d 1106, 1113 n.2 (ND. Cal. 2002). Others treat it "blend[ing] together" with the third, *Grable*, type of case. *Hendricks v. Dynegy Power Marketing, Inc.*, 160 F. Supp. 2d 1155, 1161 (S.D. Cal. 2001).

enforceability of the agreements alleged in the Complaint plainly is both basic and necessary to the viability of Cascade's claims." Oppo. at 17. But, as demonstrated above, that confounds the Tribe's affirmative defense with Cascade's claims. Further, *Grable* does not apply, as shown above. Cascade's claims cannot fall within the third type of case.

Therefore, the artful pleading doctrine does not apply to Cascade's vanilla commercial state-law claims. And it should not apply here. "[C]ourts should invoke [the artful pleading doctrine] only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Lippitt*, 340 F.3d at 1041.

C.  **Complete Preemption Does Not Apply to Cascade's Claims [Oppo. 5-13].**

The Tribe does not address the elements that must be satisfied for Cascade's claims to be completely preempted by the IGRA: Do the state laws on interference with contract, quasi-contract or fraudulent transfer regulate gaming? Op. Br. at 9-10. Answer: *No. Id.* at 13-15. Does the IGRA apply by its terms to claims for interference with contract, quasi-contract or fraudulent transfer? *Id.* at 11-12. Answer: No. *Id.* at 13-15. Will the resolution of those claims actually interfere with the tribe's regulation of gaming on its lands? *Id.* at 12-13. Answer: *No. Id.* at 13-15.

Instead, the Tribe appears to argue that, because Cascade, in its complaint, alleges that the Tribe repudiated the Cascade Contracts, including the Management Agreement, the claim itself -- not seen through the lens of the Tribe's affirmative defense -- requires the interpretation or application of federal law, and thus complete preemption applies. Oppo. at 10-11.

In support, the Tribe cites *Trump Hotels & Casino Resorts Development Company v. Roskow*, 2004 WL 717131 (D.Conn.), and specifically the statement in that case that the IGRA applies to contract disputes "pertaining to management contracts ... as those terms are defined under the IGRA." *Trump Hotels*, 2004 WL 717131 at *2. The Tribe, however, fails to quote the next sentence, which is the holding on the issue of complete preemption: "Even then, the critical issue in the preemption analysis is whether resolution of the claim would interfere with tribal governance of gaming." *Id.* Thus, the issue under *Trump Hotels*, is not whether breach of a management agreement is alleged but, even if it is, whether the claim also will actually interfere with tribal regulation of gaming. See Op. Br. at 12-13.

7

REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND

SF:115618.1

But Cascade's claims are claims for money damages and are claims against the revenues of the gaming operation, *however the Tribe chooses to regulate it.* Cascade's claims as alleged in the complaint do not interfere with the Tribe's regulation of gaming. The Tribe's argument that Cascade's claims will interfere is based on its contentions regarding the "review and approval of those agreements," which it contends is "a very important concern and purpose of the IGRA" and from which it infers that Cascade's claims "would directly affect or interfere with a tribe's ability to control or manage its gaming activities." Oppo. at 11-12. But those issues arise solely from the Tribe's affirmative defense. Cascade's claims -- considered at as they are alleged and not through the lens of the Tribe's affirmative defense -- have nothing to do with the Tribe's management of gaming. Complete preemption does not apply.

*Oneida Indian Nation v. County of Oneida*, 132 F. Supp. 2d 71 (N.D.N.Y. 2000), does not aid the Tribe's cause. Oppo. at 10-11. That case stands for the proposition that, in addition to having an actual effect on tribal regulation of gaming, the IGRA by its terms must apply to the claim as alleged. Op. Br. at 11-12. There, the claim, if successful, would have terminated gaming altogether (a spectacular effect on gaming), but, because the issues over the validity of a state compact were issues of state law and the IGRA did not apply, complete preemption does not apply. *Id.*; *Oneida*, 132 F. Supp. 2d at 76; *see also First Am. Casino Corp. v. Eastern Pequot Nation*, 175 F.2d 205, 209 (D. Conn. 2000) ("IGRA completely preempts the field of regulating Indian gaming *when the statute applies*"); *compare* Op. Br. at 11 *with* Oppo. at 11. Here, the IGRA does not apply to any of Cascade's state-law contract and secured-transactions claims.

*Tamiami Partners v. Miccosukee Tribe*, 63 F.3d 1030 (11th Cir. 1995), also aids Cascade. *But see* Oppo. at 1, 12. There, the plaintiff claimed that "the Tribe's denial of gaming licenses violated IGRA." *Tamiami*, 63 F.3d at 1044. Specifically, the "amended complaint *alleges that the Tribe has purposefully circumvented the requirements of [25 U.S.C.] § 2710(c) of IGRA ... that relate to licensing procedures in order to oust Tamiami ...*" *Id.* at 1047 n.60. Thus, the plaintiff's claims that "the Tribe breached that [federal] obligation are claims arising under federal law; hence the district court had subject matter jurisdiction over Tamiami's breach of contract claim against the Tribe." *Id.* at 1047. But Cascade, unlike Tamiami, is not challenging tribal licensing or

any other aspect of the Tribe's regulation of gaming, and it, unlike Tamiami, has not alleged a violation of federal law. Cascade's claims are not completely preempted.

*Casino Resource Corporation v. Harrah's Entertainment, Inc.*, 243 F.3d 435 (8th Cir. 2001) also helps Cascade. The court did say, "A contract dispute with the Nation itself would present another situation altogether," citing *Tamiami*, but that case involved breach of contract claims alleging violations of the IGRA. *Harrah's*, 243 F.3d at 439 n.5; Oppo. at 12.

Cascade's claims do not allege violations of the IGRA. They will not actually interfere with the Tribe's regulation of gaming. Complete preemption does not apply.

### D. The Tribe's Attempt to Leverage Its Affirmative Defense Into Federal Question Jurisdiction Must Fail.

The Tribe argues that the Court has federal question jurisdiction because: "all of these contracts [between Cascade and the Tribe] tie into, and provide for, Cascade's management of the Tribe's gaming (*as discussed in the Tribe's Motion to Dismiss*)"; "Cascade's claims fall under the scope of IGRA's regulatory scheme"; and so are completely preempted. Oppo. at 9.

The Tribe's contention that all the Cascade contracts "tie into, and provide for, Cascade's management of the Tribe's gaming" is explained by its motion to dismiss. There, the Tribe argues, first, "'management contracts'" as defined in the NIGC's regulations, "that have not been approved by the NIGC are null and void"; "the Cascade Management Agreement is plainly a document that required NIGC approval to be valid," and, second, "when considered together," the contracts "constitute an unapproved management contract ... that similarly required NIGC approval to be valid."[6] Tribe's Memo. ISO Mo. Dis. at 7, 9, 14 (filed July 15, 2005).

Thus, the predicate of the Tribe's argument for complete preemption by the IGRA is its affirmative defense that the Cascade contracts are illegal because they are management contracts that to be valid they had to be, but were not, approved by the NIGC. Oppo. at 10 ("IGRA applies to contract disputes 'pertaining to management contracts'");

Hence, the Tribe fails to comply with the basic requirements of the complete

---

[6] The Tribe is mistaken, as Cascade demonstrates in its opposition to the Tribe's motion to dismiss.

9

**REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND**

SF:115618.1

preemption doctrine. Under the general law of complete preemption and complete preemption under the IGRA, the plaintiff's claim must come within the federal statute, the IGRA. Op. Br. at 6 (discussing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), and *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003); *id.* at 10-12. In addition, the adjudication of the claim must actually interfere with the Tribe's regulation of gaming. Neither of those requirement are met here.

The Tribe is making the same error that the defendant made in *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987). There, the defendant removed based, not on the claim that the plaintiff made, but on a different claim that it could have made. *Caterpillar*, 482 U.S. at 396-97, discussed in Op. Br. at 7-8. The fundamental error there is the same the Tribe makes here: "it attempts to justify removal on the basis of facts not alleged in the complaint." *Caterpillar*, 482 U.S. at 397. The Tribe is attempting to remove based on its allegation that none of the contracts were approved by the NIGC. That key allegation is made by the Tribe. It is not made anywhere in the complaint. *Compare* Oppo. at 8 (citing Remand Motion), *with* Op. Br. at 15 ("potential defense").

### III. CONCLUSION

Cascade's claims are routine breach-of-contract and enforcement-of-security-interest claims. These are the daily bread of state courts. Federal courts, by contrast, are not open to every claim, even if a party believes it would benefit from federal adjudication. "[T]he presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive." *Grable*, 125 S. Ct. at 2368. Entry may be gained to federal court only if the specific jurisdictional requirements are met. They are not met here, but, if there is any doubt about it, this case must still be remanded. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

For these reasons, Cascade Entertainment Group, LLC, respectfully requests that the Court remand this action to the California Superior Court for the County of Sacramento.

Dated: September 19, 2005          WINSTON & STRAWN LLP

By _/s/ Mark Olson_____
Mark A. Olson
Attorneys for Plaintiff
CASCADE ENTERTAINMENT GROUP LLC

10

REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND

SF:115618.1