1  WINSTON & STRAWN LLP
   ROBERT A. JULIAN (SBN: 88469)
2  STEPHEN I. BERKMAN (SBN: 162226)
   MARK A. OLSON (SBN: 148613)
3  101 California Street, Suite 3900
   San Francisco, CA  94111-5894
4  Telephone:  415-591-1000
   Facsimile:  415-591-1400
5
   Attorneys For Plaintiff
6  CASCADE ENTERTAINMENT GROUP, LLC,
   a California limited liability company
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  CASCADE ENTERTAINMENT GROUP,          Case No.  2:05-cv-01382-MCE JFM
    LLC, a California limited liability company,
12                                         APPENDIX RE REPLY BRIEF IN
                                           SUPPORT OF CASCADE'S MOTION TO
13         Plaintiff,                       REMAND

14         vs.

15  BUENA VISTA RANCHERIA OF THE
    ME-WUK INDIANS, a sovereign Indian tribe;
16  the BUENA VISTA ECONOMIC           DATE:        September 26, 2005
    DEVELOPMENT AUTHORITY, a body      TIME:        9:00 a.m.
17  corporate and politic and instrumentality of the   COURTROOM:   3
    Buena Vista Rancheria of Me-Wuk Indians; the
18  TRIBAL COUNCIL OF THE BUENA VISTA
    RANCHERIA OF THE ME-WUK INDIANS,
19  the governing body of the Buena Vista
    Rancheria of the Me-Wuk Indians; and DOES 1
20  through 200, inclusive,

21         Defendants

22

23

24

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

APPENDIX RE REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND

SF:115690.1

1

## INDEX

2

| **NAME OF CASE** | **Tab No.** |
|---|---|
| *Caggiano v. Pfizer, Inc.,* 2005 WL 2050085 (S.D.N.Y.) | A |
| *Employers-Shopmen's Local 516 Pension Trust v. Travelers Cas. & Sur. Co.,* 2005 WL 1653629 (D. Or.) | B |
| *Harmon v. Maury County,* 2005 WL 2133697 (M.D. Tenn.) | C |
| *Kentucky v. Claymore Group,* 2005 WL 1868810 (E.D. Ky.) | D |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Winston & Strawn LLP**
**101 California Street**
**San Francisco, CA 94111-5894**

1

**APPENDIX RE REPLY BRIEF IN SUPPORT OF CASCADE'S MOTION TO REMAND**

SF:115690.1

# TAB  A

2005 WL 2050085                                                                    Page 1
--- F.Supp.2d ----, 2005 WL 2050085 (S.D.N.Y.)
**(Cite as: 2005 WL 2050085 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Patricia E. CAGGIANO and John Caggiano,
Plaintiffs,
v.
PFIZER INC. and Parke-Davis, a Division of
Warner-Lambert Company, Defendants.
No. 05 Civ. 4159(JSR).

Aug. 26, 2005.

**Background:** Consumers brought actions in state court against drug manufacturers, alleging state-law claims based on allegations that defendants caused drug to be used for unsafe purposes and misled doctors and patients as to drug's safety and efficacy. Following removal and consolidation of cases, plaintiffs moved to remand.

**Holdings:** The District Court, Rakoff, J., held that:

(1) it lacked federal question jurisdiction over consumers' state-law claims;

(2) 30-day clock for challenging removal on diversity grounds began running not when cases were removed on basis of federal question jurisdiction, but when plaintiffs were made aware of diversity jurisdiction as alternative basis for removal; and

(3) defendants' contention that federal question jurisdiction existed was not a frivolous argument, as would warrant award to plaintiffs for attorney's fees and costs incurred as a result of removal.

Motion granted.

**[1] Federal Courts ⬤⟲243**

170Bk243 Most Cited Cases
District Court lacked federal question jurisdiction over consumers' state-law claims against drug manufacturers, based on allegations that defendants caused drug to be used for unsafe purposes and misled doctors and patients as to drug's safety and efficacy, where claims did not depend on the borrowing of federal law, but, rather, violation of federal law was simply one of multiple theories on which consumers could possibly prevail.

**[2] Removal of Cases ⬤⟲107(1)**

334k107(1) Most Cited Cases
Thirty-day clock for challenging removal on diversity grounds began running not when cases were removed on basis of federal question jurisdiction, but when plaintiffs were made aware of diversity jurisdiction as alternative basis for removal, where defendants could not have properly removed cases on basis of diversity jurisdiction, and plaintiffs had no opportunity to challenge such removal. 28 U.S.C.A. § 1447(c).

**[3] Removal of Cases ⬤⟲107(11)**

334k107(11) Most Cited Cases
Defendants' contention that federal question jurisdiction existed over consumers' action against drug manufacturers, alleging state-law claims based on allegations that defendants caused drug to be used for unsafe purposes and misled doctors and patients as to drug's safety and efficacy, was not a frivolous argument, as would warrant award to consumers' for attorney's fees and costs incurred as a result of removal, although contention did not prevail. 28 U.S.C.A. § 1447(c).

**[4] Removal of Cases ⬤⟲107(11)**

334k107(11) Most Cited Cases
While bad faith removal by a defendant is not a precondition to a plaintiff's recovery of attorney's fees and costs incurred as a result of the removal, the absence of bad faith, as well as the existence of a colorable question as to whether removal is proper, weighs against the award of costs and fees. 28 U.S.C.A. § 1447(c).

James P. Rouhandeh, Davis Polk & Wardwell, New York City, for Defendants.

*OPINION AND ORDER*

RAKOFF, District Judge.

**\*1** The Court earlier consolidated under this caption and docket number 46 cases removed from New York state court that pleaded state-law claims based on allegations that defendants caused the drug Neurontin to be used for unsafe purposes and misled doctors and patients as to Neurontin's safety and efficacy. *See* Amended Order, 7/26/05. Before the Court now is plaintiffs' motion to remand these cases to state court.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The complaints in the 46 cases at issue are essentially identical. For convenience, reference will be made to the complaint in the lead case, *Caggiano v. Pfizer,* 05 Civ. 4159. That complaint alleges eight substantive claims, all rooted in state law. [FN1] The first three counts allege, in essence, that defendants marketed the drug Neurontin for "off-label" uses (*i.e.,* uses for which it had not been approved by the Food and Drug Administration) for which it was not reasonably safe or effective. *See* Complaint ¶ ¶ 136-179. The other five counts, for breach of express and implied warranty, violation of the New York Consumer Protection Act, *see* N.Y. Gen. Bus. L. § § 349-50, and common-law fraud, allege that defendants, rather than disclosing to the public this lack of safety and efficacy, misled doctors and patients as to the same. *See id.* ¶ ¶ 180-238.

Although these are all classic state-law claims, the complaint is also peppered with allegations that the defendants violated various federal statutes and regulations. For example, the complaint alleges that defendants deliberately failed to seek required FDA approval for many uses, *see id.* ¶ ¶ 16-47, 63, gave illegal kickbacks and other financial incentives to physicians who prescribed Neurontin for off-label uses, *see id.* ¶ ¶ 48, 52-53, 57, 126- 133, and induced third parties to promote Neurontin for off-label uses to evade federal law that prevents the manufacturer itself from doing so, *see id.* ¶ ¶ 63-74. The complaint further alleges that such conduct resulted in the defendants being found in violation of federal law by the Department of Health and Human Services, *see id.* ¶ ¶ 120-122, and being sued in a federal *qui tam* action by a former employee turned whistleblower, *see id.* ¶ 60; *see also United States ex rel. Franklin v. Parke-Davis,* 2003 WL 22048255, 2003 U.S. Dist. LEXIS 15754 (D.Mass.2003).

[1] These contextual allegations, however, are not enough to confer federal question jurisdiction. Where no federal claim has been pleaded, a case only "arises under" federal law if a plaintiff's "right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8-9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Here, the factual allegations set forth in the complaint state claims under New York law regardless of whether any federal law has been violated. Put another way, a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law had been violated. That the facts alleged also may constitute violations of federal law (for which recovery is being sought in

federal court) is neither here nor there. *Compare D'Alessio v. N.Y. Stock Exch.,* 258 F.3d 93, 103-04 (2d Cir.2001) (finding federal question jurisdiction where claims "necessarily require[d]" a court to construe federal law and where the duties alleged to have been breached did not exist independent of federal law).

*2 In a related case, this Court needed to go no further before remanding, because the plaintiff expressly disclaimed any intent to seek a jury instruction that would allow recovery based solely on a finding that defendants violated federal law. *See Young v. Pfizer Inc.,* 2004 WL 2998517, 2004 U.S. Dist. LEXIS 25964 (S.D.N.Y.2004). By contrast, plaintiffs here have expressed an intent to seek a determination that certain federal law violations constitute negligence *per se* under state law, *see* Complaint ¶ 147, meaning that a state court may be asked to consider whether federal law was violated. However, absent special circumstances, [FN2] there is no federal question jurisdiction over garden-variety state-law claims "resting on federal mislabeling and other statutory violations." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* --- U.S. ----, ----, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257 (2005). The duties alleged to have been breached here are not creatures of federal law, as in *D'Alessio;* rather, federal standards merely inform the content of classically state-law duties such as avoiding negligence and fraud. *Cf. Donovan v. Rothman,* 106 F.Supp.2d 513, 517-18 (S.D.N.Y.2000). Moreover, none of the claims here depend on the borrowing of federal law; rather, violation of federal law is simply one of multiple theories on which plaintiff may possibly prevail. *See Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 194 (2d Cir.2005) ("Where a federal issue is present as only one of multiple theories that could support a particular claim ... this is insufficient to create federal jurisdiction."). Accordingly, there is no federal question jurisdiction over these claims.

Having made this finding, the Court must reach the question of whether to retain the 15 of the 46 cases for which, the parties agree, there is diversity jurisdiction. It is undisputed that defendants could not have properly removed these cases on that basis, since at least one defendant is a citizen of New York. *See* 28 U.S.C. § 1441(b). However, while a federal court must remand a case to state court if it finds at any time that it lacks subject matter jurisdiction, a motion to remand on any other basis must be made "within 30 days after the filing of the notice of removal," or else it is waived. *See* 28 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2050085
--- F.Supp.2d ----, 2005 WL 2050085 (S.D.N.Y.)
**(Cite as: 2005 WL 2050085 (S.D.N.Y.))**

1447(c). All fifteen cases were removed more than 30 days before plaintiffs moved to remand on July 21, 2005. If defendants had removed these 15 cases on the basis of diversity jurisdiction, plaintiffs thus would have no recourse, notwithstanding the impropriety of such removal. *Shapiro v. Logistec USA Inc.,* 412 F.3d 307, 312 (2d Cir.2005).

But this case is somewhat different, since defendants did not remove on the basis of diversity but rather solely on the basis of purported federal question jurisdiction. Plaintiffs had no reason or opportunity to challenge the propriety of asserting diversity jurisdiction until defendants were asked by the Court, on a July 20 telephonic conference, whether any cases had an alternative jurisdictional basis in diversity; at that point, plaintiffs immediately raised the impropriety of removal on such a basis.

**\*3** [2] Neither party has pointed the Court to any relevant precedent. Nonetheless, it seems clear, as a matter of basic equitable principles, that plaintiffs cannot waive their right to challenge a basis for removal without having an opportunity to assert it. Moreover, while there is no reason to doubt the good faith of these defendants in removing on federal question grounds, to allow suits to go forward under diversity jurisdiction where they could not have been removed on that basis and where plaintiffs had no opportunity to challenge such removal is to sanction a "bait-and-switch" tactic that, in addition to being unfair, would undermine the home-state-defendant exception to diversity removal. The Court therefore holds that the 30-day clock for challenging removal on diversity grounds began running not when the case was removed on another basis but when plaintiffs were made aware of the alternative basis for removal; by this measure, plaintiffs interposed their objection well within the allotted time.

[3][4] Finally, plaintiffs' motion to recover attorney's fees and costs "incurred as a result of the removal," *see* 28 U.S.C. § 1447(c), is denied. While bad faith removal by a defendant is not a precondition to a plaintiff's recovery under this section, *see Morgan Guaranty Trust Co. of New York v. Republic of Palau,* 971 F.2d 917, 923-24 (2d Cir.1992), the absence of bad faith, as well as the existence of a colorable question as to whether removal is proper, weighs against the award of costs and fees. *See, e.g., United Mutual Houses, L.P. v. Andujar,* 230 F.Supp.2d 349, 354 (S.D.N.Y.2002). Although the defendants' contention that there is federal question jurisdiction here did not prevail, it was far from a frivolous argument.

Accordingly, plaintiffs' motion to remand is granted in full. The Clerk of the Court is directed to return the 46 cases consolidated under this caption and docket number to the Supreme Court of the State of New York, County of New York. Plaintiffs' motion for costs and fees associated with this motion is denied.

SO ORDERED.

> FN1. A ninth cause of action in *Caggiano,* for loss of services, is not a separate theory of liability but simply seeks damages on behalf of Patricia Caggiano's husband.

> FN2. Defendants argue that this is a special circumstance because the federal Food, Drug, and Cosmetic Act ("FDCA") requires uniformity in interpretation, an argument that has some force with respect to other statutory schemes. *See Grable,* 125 S.Ct. at 2368 (meaning of federal tax law "sensibly belongs in a federal court"); *Frayler v. N.Y. Stock Exch.,* 118 F.Supp.2d 448, 450 (S.D.N.Y.2000) (interpretation of securities law is "a matter of intense federal concern"). However, with respect to the standards created by the FDCA, this argument was specifically rejected by the Supreme Court in *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 815-16, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

--- F.Supp.2d ----, 2005 WL 2050085 (S.D.N.Y.)

**Motions, Pleadings and Filings** (Back to top)

• 1:05cv04159 (Docket) (Apr. 26, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB  B

Westlaw.

Slip Copy                                                          Page 1
Slip Copy, 2005 WL 1653629 (D.Or.)
**(Cite as: 2005 WL 1653629 (D.Or.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
EMPLOYERS-SHOPMENS LOCAL 516 PENSION
TRUST; Coral Construction Company Restated
Employee Profit Sharing Plan & Trust; Western
States Health and Welfare Trust
Fund of the Opeiu, Plaintiffs,
v.
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; Fidelity and Deposit
Company
of Maryland; Hartford Fire Insurance Company;
Seabury & Smith, Inc. d/b/a Marsh
Advantage America; Willis of Oregon, Inc.,
Defendants.
**No. 05-444-KI.**

July 6, 2005.
Michael E. Farnell, Emily S. Robertson, Parsons
Farnell & Grein, LLP, Portland, Oregon, for
Plaintiffs.

G. Kevin Kiely, William J. Lehman, Cable Huston
Benedict Haagensen & Lloyd, Portland, Oregon,
Michael R. Davisson, Susan Koehler Sullivan,
Sedgwick Detert Moran & Arnold, LLP, Los
Angeles, California, Thomas H. Nelson, Portland,
Oregon, John Spencer Stewart, Thomas A. Larkin,
Stewart Sokol & Gray, LLC, Portland, Oregon,
Dwain M. Clifford, James T. McDermott, Ball Janik,
LLP, Portland, Oregon, Bruce A. Rubin, Justin C.
Sawyer, Miller Nash, LLP, Portland, Oregon, James
H. Gidley, Kevin M. Sali, John P. Nusbaum, Perkins
Coie, LLP, Portland, Oregon, for Defendants.

OPINION

KING, J.

*1 Plaintiffs, three ERISA [FN1] trusts
(collectively, the "Trusts"), all suffered large losses
when their investments through Capital Consultants,
LLC ("CCL") collapsed. When the Trusts were
unable to collect on bonds purchased to protect
against such dishonesty, the Trusts sued their brokers
and insurers in state court. Defendants removed the
action to this court and the Trusts objected. I will first
address a procedural defect argument. Then, prior to

"wad[ing] into the veritable Sargasso Sea of
obfuscation that is ERISA preemption law," [FN2]
Rutledge v. Seyfarth, Shaw, Fairweather, 201 F.3d
1212, 1223 (9th Cir.) (internal quotation omitted),
cert. denied, 531 U.S. 992 (2000), I must determine if
ERISA preemption must be addressed, as the Trusts
contend, or should not be addressed, as defendants
contend. Before the court is Plaintiffs' Motion to
Remand (# 32) and Defendant Seabury & Smith,
Inc.'s Motion to Sever (# 55). For the reasons below,
I remand this action to state court.

> FN1. Employee Retirement Income Security
> Act, 29 U.S.C. § 1001 et seq.

> FN2. A tip of the hat to plaintiffs for
> pointing out that wonderful quotation.

ALLEGED FACTS
The Trusts used brokers to purchase ERISA-
compliant fidelity bonds from insurers. Employers-
Shopmens Local 516 Pension Trust ("Local 516")
used Seabury & Smith dba Marsh Advantage
America ("Marsh") to purchase the bond from
Travelers Casualty and Surety Company of America
("Travelers"). Western States Health and Welfare
Trust Fund of the OPEIU ("Western") used Marsh to
purchase the bond from Hartford Fire Insurance
Company ("Hartford"). Coral Construction Company
Restated Employee Profit Sharing Plan & Trust
("Coral") used Willis of Oregon, Inc. ("Willis") to
purchase the bond from Fidelity and Deposit
Company of Maryland ("Fidelity"). Coral first
purchased a bond from Fidelity in 1980 and renewed
it through 2002. The 1980 Fidelity bond used a
definition of "employee" that was coextensive with
people required to be bonded under ERISA. When
Coral renewed the bond in 1992, Fidelity changed the
definition of "employee" to one which is less
inclusive and which matches the definition in the
bonds issued by Travelers and Hartford.

The Trusts all had money invested with CCL which
was lost through the allegedly fraudulent and
dishonest conduct of CCL. The insurers refused to
pay claims plaintiffs made against their bonds
because the insurers claim CCL does not fall within
the definition of "employee." Plaintiffs bring this
action alleging breach of contract and tort claims
against the insurers and alternative breach of contract
and tort claims against the brokers for not procuring

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1653629 (D.Or.)
(Cite as: 2005 WL 1653629 (D.Or.))

Page 2

ERISA-compliant bonds, if plaintiffs do not prevail against the insurers.

## DISCUSSION

### I. *Motion to Sever*

Marsh moves to sever the claims brought by plaintiff Coral from the claims brought by the other two plaintiffs, Local 516 and Western. Hartford does not oppose severance. The Trusts oppose severance, as do Willis and Fidelity. Travelers did not take a position.

Marsh interprets the First Amended Complaint such that Coral only bases its claims on the 1980 Fidelity bond and not on its bond which was effective when CCL's conduct occurred. Based on this reading, Marsh argues that Coral's claims arise from different facts than the claims of Local 516 and Western because the "employee" definition in the 1980 Fidelity bond differs from the definition in the other trusts' bonds. Marsh argues that there would be jury confusion if Coral's claims are not severed. Marsh also contends that severance of Coral's claims is appropriate because Coral sued the only party, Willis, that destroys diversity. Marsh asks the court to preserve diversity jurisdiction by severing the nondiverse party, if necessary to do so because the court finds that there is no federal question jurisdiction.

**\*2** The Trusts contend that Coral asserts claims based on the 1980 Fidelity bond in addition to claims based on its current bond. Although the Trusts raise other arguments, I need not address them here. I also read the First Amended Complaint in the same way as the Trusts do. And I agree that I cannot sever claims over which this court does not have jurisdiction. Thus, I turn to the question of remand.

### II. *Motion to Remand*

Plaintiffs move to remand this action for either of two reasons: (1) a procedural argument that the Notice of Removal was defective; and (2) a substantive argument that the court lacks subject matter jurisdiction.

A civil action brought in state court may be removed by the defendant to the federal district court if the district court has original jurisdiction over the action, that is, if the action could have been brought first in the district court. 28 U.S.C. § 1441(a). The party seeking removal has the burden of establishing federal jurisdiction. *Westinghouse Elec. Corp. v.*

*Newman & Holtzinger, P.C .*, 992 F.2d 932, 934 (9th Cir.1993). Courts strictly construe the removal statute against removal jurisdiction. Any doubt as to the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992).

### A. *Notice*

The Trusts filed this action in Multnomah County Circuit Court on February 18, 2005 against all defendants except Willis. On February 24, 2005, the day after the tolling agreement between Coral and Willis expired, the Trusts amended the complaint to add Willis as a defendant in the claim alleged by Coral. Willis is the only nondiverse defendant. Defendants were served the First Amended Complaint on February 28, 2005.

Defendants removed the action on March 29, 2005. The Notice of Removal contained a copy of the First Amended Complaint but did not include the pleading's exhibits. On April 8, 2005, after the 30-day removal period expired, defendants filed an Amendment to Notice of Removal which included the exhibits. On April 28, 2005, the Trusts moved to remand the action.

The Trusts contend that the action must be remanded because the Notice of Removal was procedurally defective due to the lack of exhibits. The Trusts note that they objected within the 30-day remand period so they did not waive the defect. Essentially, the Trusts argue that the Notice of Removal filed within the 30-day removal period was invalid because of the defect. According to the Trusts, a valid Notice was not filed until the exhibits were provided in the Amendment, but that filing was untimely because the 30-day removal period had passed. Although the Trusts do not argue any prejudice, they note that none is required for remand and that the removal statute is strictly construed, even for matters that may seem inconsequential. The Trusts also note that the removal statute was amended in 1988 to require the filing of remand motions within 30 days of the filing of the notice of removal if the remand motion is based on any defect other than lack of subject matter jurisdiction. The Trusts thus argue that pre-1988 cases are inapplicable when analyzing the current version of the statute.

**\*3** Defendants argue that they cured any procedural defect caused by the lack of exhibits. Defendants also argue that in the Ninth Circuit, a procedural defect of this type is not a basis to remand an action. Defendants contend that the 1988 amendment is a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

limitation on opposing removal and should not be used to prohibit defendants from curing a procedural defect.

The statutes now state:
(a) A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
28 U.S.C. § 1446.
(c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
28 U.S.C. § 1447.

Prior to amendment in 1988, Section 1447(c) stated:
If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

The 1988 amendment divides removal defects into procedural defects and jurisdictional defects. Jurisdictional defects are never waived and may be raised at any time before final judgment. Congress has required plaintiffs to object to procedural defects within 30 days or the objection is waived. I agree with plaintiffs' contention that the amendment destroys the persuasiveness of cases based on the pre-1988 statute which ignore merely formal defects because they are not jurisdictional. The current statute applies to "any defect" and does not further divide defects into the formal or modal variety versus the substantial or prejudicial variety. As mentioned above, the removal statute must be strictly construed

in order to keep from expanding this court's limited jurisdiction.

I acknowledge defendants' argument based on the legislative history accompanying the 1988 amendment that its purpose was to prevent a remand due to a procedural defect that was not raised until long after the case was underway in federal court. Because the language of the statute is clear, however, I am to look no further to interpret it. _Avendano-Ramirez v. Ashcroft_, 365 F.3d 813, 816 (9th Cir.2004) ("Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning.").

**\*4** Defendants rely on a few post-1988 cases. The full extent of the analysis of the issue is contained in a footnote in _Western Chance No. 2, Inc. v. KFC Corp._, 957 F.2d 1538, 1540 n. 3 (9th Cir.1992) (citations omitted):
Western Chance claims that the district court lacked subject matter jurisdiction because KFB did not attach a copy of Western Chance's motion for a preliminary injunction when it removed the case from the state Superior Court. Just how that failure could deprive the court of jurisdiction is not clear to us. To the extent that the failure to attach that document was an error, it was one that the district court could allow KFB to cure, as it did.

_Western Chance_ does not address the issue before me. Defendants here failed to attach to the Notice of Removal the exhibits to the First Amended Complaint. An exhibit to a pleading is a part of the pleading for all purposes. Fed.R.Civ.P. 10(c). Defendants in _Western Chance_ failed to attach the motion for a preliminary injunction. Motions, however, are not pleadings. Fed.R.Civ.P. 7(a) (a pleading is a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, and a third-party answer). The statute does not require motions to be attached to the notice of removal. Furthermore, the appellate court only mentioned subject matter jurisdiction rather than a procedural defect, the argument raised by the plaintiffs before me. For these reasons, I am not persuaded that _Western Chance_ governs this situation.

Defendants also rely on _Efford v. Milam_, 368 F.Supp.2d 380 (E.D.Pa.2005), in which defendants did not file the praecipe for writ of summons and the certificate of service until shortly after the 30-day removal period ended. _Efford,_ relying on pre-1988

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cases, excuses the procedural defect as one that is "merely formal or modal." *Id.* at 383. As explained above, I do not believe that reasoning is persuasive given the amendment in the statute.

Therefore, I conclude that any defect in removal procedure must be cured within the 30-day removal period or it is fatal to the removal. Other district courts have decided cases on this basis. *See Kisor v. Collins,* 338 F.Supp.2d 1279 (N. D.Ala.2004) (case remanded when failure to include a copy of the summons and returns of service was not cured until after 30-day removal period was over); *Macri v. M & M Contractors, Inc.,* 897 F.Supp. 381 (N.D.Ind.1995) (case remanded when defects of an unsigned removal petition, lack of prompt written notice to plaintiff, and failure to promptly file a copy of the notice with the state court were not cured until after 30-day removal period was over).

Defendants contend that I have the discretion to ignore the lateness but do not provide any authority other than what I discounted above. I would be inclined to remand the action on the basis of the procedural defect alone, but the substantive question also requires remand.

B. *Subject Matter Jurisdiction*

**\*5** Alternatively, the Trusts argue for remand because this court lacks subject matter jurisdiction, asserted by defendants in the Notice of Removal to be a federal question. The Trusts contend that they only allege traditional state law claims related to the fidelity bonds and that the claims will require interpretation of an insurance policy and the policy's regulatory approval, marketing, procurement, and issuance. Plaintiffs assumed that defendants would rely on complete ERISA preemption to support federal question jurisdiction.

Instead, defendants contend that federal question jurisdiction exists by relying on another of the exceptions to the well-pleaded complaint rule, namely, that the Trusts' right to relief depends on the resolution of a substantial federal question. Defendants claim that the court need not tackle an ERISA preemption analysis. They note the numerous references to ERISA in the First Amended Complaint and contend that the claims are substantially based on defendants' failure to comply with the requirements of ERISA by providing bonds which have the mandated coverage. Defendants contend that the court must determine if the bonds issued by them comply with ERISA by determining what ERISA requires and how, if at all, any ERISA requirements affect the contracts entered into and alleged representations made by defendants.

In reply, the Trusts insist that the only appropriate analysis is whether the Trusts' claims are preempted by ERISA. The Trusts note that since the Supreme Court extended the complete preemption doctrine to ERISA in *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58 (1987), employee benefit cases invariably have been examined exclusively by application of that doctrine. The Trusts also point to cases in which courts that addressed a completely preempted field, such as ERISA or the Labor Management Relations Act ("LMRA"), also go on to perform a substantial federal question analysis on different claims which were arguably federal. The Trust contends that courts first consider whether Congress intended to completely preempt the field. If so, the court applies the complete preemption analysis. If not, and only if not, the court applies the substantial federal question analysis.

If the jurisdiction is based on a federal question, the court must apply the "well-pleaded complaint rule" which provides that removal is appropriate only if a federal question appears in the complaint's statement of the claims, and not in anything alleged in anticipation of avoidance of defenses. *Lippitt v. Raymond James Financial Services, Inc.,* 340 F.3d 1033, 1040 (9th Cir.2003).

Under a corollary to this rule, the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction by omitting allegations of federal law that are essential to the establishment of his claim. *Id.* at 1041. The artful pleading doctrine, which should be invoked in limited circumstances due to issues of federal and state relationships, "allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Id.* (internal quotation omitted). The doctrine is used in complete preemption cases, such as under ERISA and the LMRA, and in substantial federal question cases. The latter category includes cases where the claim is "necessarily federal in character or where the right to relief depends on the resolution of a substantial, disputed federal question." *Id.* at 1041-42 (internal citation omitted).

**\*6** The Supreme Court recently noted the constant refrain in substantial federal question cases that federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,    U.S.   , 125 S.Ct. 2363, *4 (2005)* (federal question jurisdiction existed in quiet title action based on federal tax law). The Court continued:

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.... Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

*Id.* at *4-*5.

This last quotation is particularly instructive here where Congress has spoken forcefully on the division of labor between state and federal courts by completely preempting ERISA cases. Thus, I agree with the Trusts that the appropriate analysis is an ERISA preemption analysis.

The Ninth Circuit has provided a comprehensive explanation of ERISA preemption:

> In order to be removable to federal court, a claim concerning a plan governed by ERISA must be preempted by ERISA and must fall within the scope of ERISA's enforcement provisions. *Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62-66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); see also Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir.1998).*

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that ERISA's provisions shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." While this section suggests that the phrase "relate to" should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan. *See New York State Conference of Blue Cross &*

*Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)* (stating that "infinite relations cannot be the measure of preemption" in construing "relate to").

Generally speaking, a common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." *Id.* (internal quotation marks omitted); *see also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1052 (9th Cir.1999).*

*7 In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient "reference" exists to support preemption. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324-25, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)* (citing *Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)*).

In determining whether a claim has a "connection with" an employee benefit plan, courts in this circuit use a relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant. *See Abraham v.. Norcal Waste Sys., Inc., 265 F.3d 811, 820-21 (9th Cir.2001)* [claims of noteholders in leveraged buyout of an employee stock ownership plan not completely preempted by ERISA]; *Blue Cross of Cal., 187 F.3d at 1052-53* [insurer's actions against medical providers to compel arbitration were not preempted by ERISA because the relationship was not one regulated by ERISA, such as the relationships between plan and plan member, plan and employer, and plan and trustee].

*Providence Health Plan v. McDowell, 385 F.3d 1168, 1171-72 (9th Cir.2004), cert. denied, 125 S.Ct. 1726 and 125 S.Ct. 1735 (2005)* (insurer's breach of contract claim for reimbursement by insured is not preempted by ERISA and was remanded).

The Trusts' breach of contract and tort claims are premised on their purchase of the bonds, not on the existence of the ERISA plans. The ties between the claims and the plans are too tenuous to be said to "reference" the plans sufficiently to support preemption.

Turning to the relationship test, the relationship at issue, between the Plans and their insurers and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1653629 (D.Or.)
**(Cite as: 2005 WL 1653629 (D.Or.))**

brokers, is not a core relationship governed by ERISA. The purpose of ERISA was not to protect any of the parties in the relationship. I conclude that the claims do not have connections with the plans sufficient to support preemption.

The issues touch on ERISA, but not sufficiently to require their resolution in federal court. Although I sympathize with the parties being stretched between two courts, I cannot exercise jurisdiction which this court does not possess. Consequently, I remand this action to Multnomah County.

## CONCLUSION

Plaintiffs' Motion to Remand (# 32) is granted. This action is remanded to Multnomah County Circuit Court. Defendant Seabury & Smith, Inc.'s Motion to Sever (# 55) is moot. Hartford Fire Insurance Company's Motion to Consolidate Case No. CV05-444-KI with Case No. CV05-221-KI (# 25), filed in CV05-221-KI, is denied as moot. [FN3]

> FN3. Although the consolidation motion is technically moot, I intend to hold a status conference soon to discuss sua sponte the consolidation of the three remaining related cases.

Slip Copy, 2005 WL 1653629 (D.Or.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB  C

Slip Copy
Slip Copy, 2005 WL 2133697 (M.D.Tenn.)
**(Cite as: 2005 WL 2133697 (M.D.Tenn.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee, Nashville Division.
Shirley HARMON and Don Harmon, Plaintiffs,
v.
MAURY COUNTY, TENNESSEE; Malinda
Stanford, Individually and as Director of
Accounts and Budges, Maury County Government;
Sarah Anderson, individually and
as Maury County Commissioner; Jerry Erwin,
individually and as Maury County
Commissioner; and Express Scripts, Inc., Defendants.
No. 1:05 CV 0026.

Aug. 31, 2005.
<u>Scott C. Williams</u>, Waller, Lansden, Dortch &
Davis, Columbia, TN, for Plaintiffs.

<u>Jeffrey M. Beemer</u>, Stewart, Estes & Donnell,
<u>Michael Ernest Evans</u>, Davies, Humphreys & Evans,
Nashville, TN, <u>Daniel Mark Nolan</u>, Batson, Nolan,
Brice, Williamson & Girsky, Clarksville, TN,
<u>Stephen D. Gay</u>, Husch & Eppenberger, LLC,
Chattanooga, TN, for Defendants.

*MEMORAUDUM*

<u>HAYNES</u>, J.

**\*1** Plaintiffs, Shirley Harmon and Don Harmon
originally filed this action in the Circuit Court for
Maury County, Tennessee, against the Defendants:
Maury County, Tennessee; Malinda Stanford
individually and as Director of Accounts and Budges,
Maury County Government; Sarah Anderson,
individually and as Maury County Commissioner;
Jerry Erwin, individually and as Maury County
Commissioner and Express Scripts, Inc. Plaintiff
asserts state law claims, including a negligence per se
claim for violations of <u>45 CFR § 164.502</u>, by the
Defendant Express Scripts, Inc. Specifically,
Plaintiffs allege that: "Defendant Express Scripts
violated <u>45 CFR § 164.502</u> by disclosing Mrs.
Harmon's prescription drug records to Defendant
Stanford."

The Defendant removed the action to this Court
asserting that Plaintiffs' claims based upon <u>45 C.F.R.
§ 164.502</u> were federal law claims and presented a
significant federal question under <u>28 U.S.C. § 1331</u>,
the federal question statute. ESI also requests the
Court to exercise its supplemental jurisdiction under
<u>28 U.S.C. § 1367</u> over Plaintiffs' remaining state law
claims, including their claims against Defendants
Maury County, Tennessee, Malinda Stanford, Sarah
Anderson, and Jerry Erwin.

Before the Court is the Plaintiffs' motion to remand
(Docket Entry No. 15) contending, in sum, that their
reliance on <u>45 CFR § 164.502</u> does not convert their
state law claim into a federal law claim nor does their
claim present a substantial federal question, citing,
*inter alia, Merrell Dow Pharmaceuticals Inc. v.
Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d
650 (1986). In response, the Defendants' argue that a
substantial federal question exists and warrants
removal, citing among other cases, *Grable & Sons
Metal Product, Inc. v. Darue Engineering & Mfg.,* ---
U.S. ---- 2005WL1383604 (U.S. June 13, 2005).

Pursuant to <u>28 U.S.C. § 1447</u>, "[i]f at any time
before final judgment it appears that the district court
lacks subject matter jurisdiction, the case shall be
remanded." <u>28 U.S.C. § 1447</u>. The Defendant bears
the burden of proof to justify removal. *Conrad v.
Robinson,* 871 F.2d 612, 614 (6th Cir.1989).
Moreover, "statutes conferring removal jurisdiction
are to be construed strictly because removal
jurisdiction encroaches on a state · court's
jurisdiction." *Brierly v. Alusuisse Flexible Packaging,
Inc.,* 184 F.3d 527, 534 (6th Cir.1999). All doubts are
resolved in favor of remand. *Jacada, Ltd. v.
Client/Server Technology (Europe), Ltd.,* 401 F.3d
701, 704 (6th Cir.2005). Traditionally, whether
plaintiffs' claims arise under federal law is
determined by the well pleaded complaint doctrine,
*Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107
S.Ct. 2425, 96 L.Ed.2d 318 (1987) under which the
Plaintiff is deemed "the master of the claim" and may
elect to please a state law claim in lieu of a federal
law claim.

Plaintiffs rely upon *Merrell Dow* holding that "a
complaint alleging a violation of a federal statute as
an element of a state cause of action, when Congress
has determined that there should be no private,
federal cause of action for the violation, does not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

state a claim "arising under the Constitution, laws, or treaties of the United States." 478 U.S. at 817. The Defendants rely upon *Grable* that notwithstanding the assertion of a state law claim, if that claim raises a "substantial question" of federal law "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum," the requirements of 28 U.S.C. § 1331 are satisfied and removal is appropriate. 2005WL1383604 *4.

**\*2** Yet, in *Beneficial National Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), the Supreme Court stated that "[a] state claim may be removed to federal court in only two circumstances- when Congress expressly so provides, or when a federal statute wholly displaces the state-law cause of action through complete pre-emption. The "complete preemption' arises where "Congress ... so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* (quoting *Metro, Life Ins. Co.,* 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1978)). In *Beneficial National Bank,* the Supreme Court explained that complete preemption arises when, "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." 539 U.S. at 8.

Citing *Beneficial National Bank,* the Sixth Circuit stated: "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Roddy v. Grand Truck R.R. Inc.,* 395 F.3d 318, 322 (6th Cir.2005) (quoting *Beneficial National Bank,* 539 U.S. at 8). This Sixth Circuit further stated:

> Complete preemption that permits removal is reserved for statutes "designed to occupy the regulatory field with respect to a particular subject and to create a superseding cause of action" while ordinary preemption applies to statutory sections that arguably supersede conflicting state laws without creating the right of removal ... "[T]he congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule."

*Id.* (quoting *Strong v. Telectronics Pacing Sys. Inc.,* 78 F.3d 256, 260 (6th Cir.1996) and citing *Warner v. Ford Motor Co.,* 46 F.3d 531, 534-35 (6th Cir.1995) (en banc )).

45 CFR § 164.502 that Plaintiffs cite for their negligence *per se* claim is promulgated under the Health Insurance Portability and Accountability Act ("HIPAA") 42 U.S.C. § 1320d. As one District Court noted "[n]o federal court reviewing the matter has ever found that Congress intended HIPAA to create a private right of action." *Dominic v. Wyoming Velley West High School,* 362 F.Supp.2d 572 (M.D.Pa.2005); (quoting *Seif v. Lake Park High Sch. Dist.,* N. 03- C5003, 2003 WL 22388878, at *4 (N.D.Ill. Oct.21, 2003) and citing *Brock v. Provident Am. Ins. Co.,* 144 F.Supp .2d 652, 657 (N.D.Tex.2001).

Moreover, HIPAA's lack of a private right of action has been cited as evidence of the lack of complete preemption. In *M.P. Means, et al. v. Independent Life and Accident Insurance Co.,* 963 F.Supp. 1131, 1135 (M.D.Ala.1997), the district court stated: "... HIPAA provides for an enforcement mechanism for the Secretary of Health and Human Services. Furthermore, the Defendants have failed to point to any, and the court finds no evidence of congressional intent to create a private right of action under the HIPAA. *See* [*Wright v. Combined Insurance Co. Of America,* 959 F.Supp. 356 (1997) ], (no evidence of manifest congressional intent in the HIPAA to create a federal cause of action which is removable)."

**\*3** In *Wright,* the district court noted that "the fact that state law claims may be preempted under HIPAA is not conclusive as to whether those claims are removable to this court. Rather, ... [the] ruling of the court is limited to specific issue of whether the plaintiff's state law claims are 'completely preempted' so as to allow removal of those claims to this court. It is the opinion of the [court] that they are not and that removal to this court of those claims was improper." 959 F.Supp at 36.

HIPAA's provisions do not completely preempt state law and expressly preserve state laws that are not inconsistent with its terms.

(a)(1) General effect. Except as provided in paragraph (2), a provision or requirement under this part [42USCS § § 1320d et seq.] or a standard or implementation specification adopted or established under sections 1172 through 1174 [42 U.S.C.S. § § 1320d-1 through 1320d-3] *shall supercede any contrary provision of contrary State law,* including a provision of State law that requires medical or health plan records (including billing information) to be maintained or transmitted in written rather than electric form

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 3
Slip Copy, 2005 WL 2133697 (M.D.Tenn.)
**(Cite as: 2005 WL 2133697 (M.D.Tenn.))**

(b) Exceptions. A provision or requirement under this part [42 U.S.C.S. § § 1320d *et seq* ] or a standard or implementation specification adopted or established under Sections 1172 through.1174 [42 U.S.C.S. § § 1320d-1 through 1320d-3] *shall not supercede a contrary provision of State law-*
(A) is a provision the Secretary determines-
(i) is necessary-
(I) to prevent fraud and abuse;
(II) to ensure appropriate State regulation of insurance health plans;
(III) for State reporting on health care delivery or costs; or
(IV) for other purposes; or
(ii) addresses controlled substances; or
(B) subject to section 264(c)(2) a of the Health Insurance Portability and Accountability Act of 1996 [42 USCS § 1320D-2 note], relates to the privacy of individually identifiable health information.
42 U.S.C. § 1320d-7 (a)(b). (emphasis added).

The Defendants' reliance on *Grable* is misplaced. There, the controversy involved federal tax laws that would have provided the asserted landowner with an express statutory remedy to challenge the federal tax notice of seizure of land in that case. --- U.S. ---- ----, n. 41, 125 S.Ct. 2363, 162 L.Ed.2d 257, 2005 WL 1383604 *6, n. 41. Although that remedy was inapplicable given that title to the land was then vested in a private person's name, the Supreme Court stated that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court" and that the "Government was a strong interest" in tax collection. Id.

Here, there is no private remedy under federal law and the critical interest is the privacy interests of the Plaintiffs. Moreover, in *Grable,* the Supreme Court noted that state law claims in the state courts are often based upon a federal regulation.
"One only needed to consider the treatment of federal violations generally in garden variety state tort law 'the violation of federal statute and regulations is commonly given negligence per se effect in state tort proceedings." Restatement (Thread) of Torts (proposed final draft) § 14, comment a) See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts, § 36, p. 221, n. 9 (5th ed. 1984) ("[T]he breach of a federal statute may support a negligence per se claim as a matter of state law" (collecting authority)). A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would

thus have heralded a potentially enormous shift of traditionally state cases into federal courts. Expressing concern over the "increased volume of federal litigation," and noting the importance of adhering to "legislative intent," *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law "solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] ... under state law." 478 U.S., at 811-812, 106 S.Ct. 3229, 92 L.Ed.2d 650 (internal quotation marks omitted). In this situation, no welcome mat meant keep out. *Merrell Dow* analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.
*4 Id. at 7.

Applying *Beneficial National Bank,* the Court concludes that Congress did not provide an exclusive federal remedy under HIPAA and HIPAA does not completely preempt state law. There is no compelling federal interest nor is a substantial federal question presented. Plaintiffs' claims fall within that broad class of state law claims based on federal regulations in the state court, as described in *Grable.* Thus, the Plaintiffs' motion to remand should be granted.

An appropriate Order is filed herewith.

Slip Copy, 2005 WL 2133697 (M.D.Tenn.)

**Motions, Pleadings and Filings (Back to top)**

•       1:05CV00026       (Docket) (Apr. 27, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB  D

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2005 WL 1868810 (E.D.Ky.)
**(Cite as: 2005 WL 1868810 (E.D.Ky.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Kentucky.
COMMONWEALTH OF KENTUCKY, Plaintiff,
v.
CLAYMORE GROUP OF AMERICA CORP.,
Defendant.
**No. Civ.A. 3:05-40-JMH.**

Aug. 4, 2005.
Michael Plumley, Office of Attorney General,
Frankfort, KY, for Plaintiff.

David Foster Dobbins, Patterson, Belknap, Webb &
Tyler LLP, New York, NY, Melinda G. Wilson,
M.G. Wilson, PLLC, Lexington, KY, Walter Michael
Luers, Patterson, Belknap, Webb & Tyler LLP, New
York, NY, for Defendant.

MEMORANDUM OPINION AND ORDER

HOOD, J.

*1 This matter is before the Court on Plaintiff's
motion to remand [Record No. 5]. Defendant filed a
response to the motion to remand [Record No. 11] to
which Plaintiff replied [Record No. 12]. Also before
the Court is Defendant's request for oral argument
[Record No. 13] to which Plaintiff responded
[Record No. 14]. Having determined that oral
argument on this matter is unnecessary and that
Plaintiff's motion to remand is now ripe for decision,
the Court addresses the merits of said motion at this
time.

BACKGROUND
Plaintiff brings this action pursuant to KRS §
131.602(3) to secure injunctions and recover
penalties against Defendant, a tobacco product
manufacturer, for allegedly failing to comply with the
dictates of KRS § 131.602. The statute requires all
cigarette manufacturers whose products are sold in
the Commonwealth of Kentucky and who do not opt
to participate in the "Master Settlement Agreement"
to deposit into escrow an amount equal to
approximately $4.00 per carton of their cigarettes
sold in Kentucky. Plaintiff asserts the instant cause of
action, alleging that Defendant has failed to comply
with its escrow obligations.

Also pending in this Court is a separate, but related
cause of action--*Trient Int'l Corp. DWI, LLC v.
Commonwealth of Kentucky,* Frankfort Civil Action
No. 04-67 (*"Trient"* ). In such case, the Plaintiffs
allege that the Kentucky Master Settlement
Agreement statutes ("MSA statutes") per se violate
federal antitrust laws.

DISCUSSION
Initially, it merits mentioning that Defendant
removed this cause of action to federal court on
*diversity jurisdiction* grounds. However, after
Plaintiff argued that the diversity requirements were
not met in the motion to remand, Defendant
seemingly abandoned "diversity jurisdiction" as its
argument for removal. As such, the Court need not
address the diversity requirements. On that note,
however, Plaintiff argues in its reply that the Court
should restrict Defendant's argument to that
originally contained in the Notice of Removal--a
diversity jurisdiction, and not a federal question
jurisdiction, argument. However, because the Court
finds that this case does not satisfy the federal
question requirements as described below, the Court
need not address the question of whether Defendant
should be precluded from arguing federal question
jurisdiction in response to Plaintiff's motion to
remand.

Generally, a civil case brought in state court may be
removed to federal court if the federal court would
have had original jurisdiction over the case. 28
U.S.C. § 1441(a). Federal question jurisdiction may
be invoked in cases "arising under the Constitution,
laws, or treaties of the United States." 28 U.S.C. §
1331. Furthermore, federal question jurisdiction is
invoked "by and large by plaintiffs pleading a cause
of action created by federal law." *Grable & Sons
Metal Prods., Inc. v. Darue Eng'g & Mfg.,* --- U.S. ---
-, 125 S.Ct. 2363, 2366, --- L.Ed.2d---- (2005). On
the other hand, the Supreme Court recognizes
"another longstanding, if less frequently encountered,
variety of federal 'arising under' jurisdiction" wherein
the Court finds federal question jurisdiction over
"state-law claims that implicate significant federal
issues." *Id.* at 2366-67.

*2 Without question, a Defendant may not rely on a
*defense* arising under federal law as grounds for
removal. *Roddy v. Grand Trunk W. R.R. Inc.,* 395

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F.3d 318, 322 (6th Cir.2005). As the court in *Roddy* recognized, " 'a case may *not* be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." ' *Id.* (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Moreover, "if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for the purpose of removal." *Id.*

In this case, Plaintiff argues that because the *Tritent* case raises the question of whether the MSA statutes violate federal antitrust laws, this case likewise arises under federal law. In other words, according to Plaintiff, because the ultimate resolution of the antitrust issue in the *Tritent* case will affect the Commonwealth's ability to collect damages arising out of Defendant's alleged failure to comply with the MSA statutes, then this case raises substantial questions of federal law.

The Sixth Circuit has stated that "a federal question may arise out of a state law case or controversy if the plaintiff asserts a federal right that 1) involves a substantial question of federal law; 2) is framed in terms of state law; and 3) requires interpretation of federal law to resolve the case." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 377 F.3d 592, 595 (6th Cir.2004), *aff'd* --- U.S. ----, 125 S.Ct. 2363, 2366, --- L.Ed.2d---- (2005). In *Grable & Sons,* the plaintiff brought a quiet title action alleging that the defendant's quitclaim deed was invalid because the plaintiff was not afforded proper notice under 26 U.S.C. § 6335(a). *Id.* at 594. The Sixth Circuit found that federal question jurisdiction was invoked properly because the quiet title action was "rooted in the Internal Revenue Code, the correct interpretation of which represents a substantial federal interest." *Id.* at 596.

After granting certiorari in *Grable & Sons,* the Supreme Court affirmed the Sixth Circuit's holding that the quiet title action satisfied the requirements for federal question jurisdiction. *Grable & Sons,* 125 S.Ct. at 2368. In so doing, the Court answered yes to the question of whether the plaintiff's "state-law claim necessarily raise[d] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

In addition to citing the *Grable & Sons* decisions to support its argument in opposition to remand, Defendant cites *Sable v. General Motors Corp.,* 90 F.3d 171 (6th Cir.1996). In *Sable,* the Sixth Circuit found that it had federal question jurisdiction over the plaintiff's trespass case where the plaintiff's land was burdened solely because of federal consent decrees negotiated between the Environmental Protection Agency ("EPA") and the landowner and between the EPA and the defendants. *Id.* at 175. Because the remedy sought by the plaintiff directly conflicted with the federal consent decrees, the court found that the case did arise under federal law.

*3 The Court finds both *Sable* and *Grable & Sons* distinguishable from the facts at hand. In this case, Plaintiff's complaint does not *arise* under federal law. The only reason that federal law will become applicable in this case is because, presumably, Defendant will allege a federal defense. The question as framed in *Sable* was whether the plaintiff's complaint *derived* from federal law; because the plaintiff's complaint arose only because of the federal consent decrees, the court concluded that the complaint did derive from federal law. *Id.* at 174-75. Similarly, in *Grable & Sons,* the plaintiff's case derived from federal law in that it arose only because the plaintiff was not provided proper notice under the federal tax code. *Grable & Sons,* 377 F.3d at 594. Plaintiff's complaint in this case clearly derives from state law. Federal law is only at issue because Defendant plans to raise it in a defense.

Consideration of the three factors outlined by the Sixth Circuit in *Grable & Sons* only reinforces the Court's conclusion. With respect to the first factor, although it is true that Defendant plans on raising a question of federal law, the *Plaintiff* has not asserted a federal right that involves a question of federal law. *See id.* at 595 ("[A] federal question may arise out of a state law case or controversy if the *plaintiff* asserts a federal right that 1) involves a substantial question of federal law." (emphasis added)). With respect to the second consideration, Plaintiff's claim is framed in terms of state law. *Id.* However, with respect to the third consideration, interpretation of federal law is not required, again, with respect to *Plaintiff's* claim. *Id.* The only reason that federal law will be considered is because Defendants will raise it. This, in the Court's view, is not sufficient to establish federal question jurisdiction. *See Roddy,* 395 F.3d at 322.

Certainly, the Court recognizes the benefits of litigating the issues raised in the instant cause of action and the issues raised in *Tritent* in the same

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 1868810 (E.D.Ky.)
**(Cite as: 2005 WL 1868810 (E.D.Ky.))**

forum. However, efficiency considerations weighing in favor of litigating the cases in the same forum does not create jurisdiction where jurisdiction does not otherwise exist. Moreover, nothing will preclude Defendant from filing a motion with the state court to hold the instant cause of action in abeyance pending this Court's resolution of the question of whether the MSA statutes at issue violate federal antitrust laws.

CONCLUSION

Accordingly, IT IS ORDERED:

(1) that Defendant's request for oral argument [Record No. 13] be, and the same hereby is, DENIED;

(2) that Plaintiff's motion to remand [Record No. 5] be, and the same hereby is, GRANTED; and

(3) that this action be, and the same hereby is, REMANDED to Franklin Circuit Court.

Slip Copy, 2005 WL 1868810 (E.D.Ky.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.